## CALDWELL ET AL. *vs.* WESTERN MARINE AND FIRE INSURANCE COMPANY.

### APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

A competent crew is necessary to the sea worthiness of a boat or ship; but
if one is provided, the occasional absence from the vessel of a hand or sea-
man on the business of the voyage does not defeat the policy, especially
when his presence could not have prevented the accident.

A strong case of necessity is required to justify a master in selling his boat
or vessel and cargo, if other means of saving either be within his reach. But
where he acts with fairness and uses all proper diligence to save both he
will be justified by the necessity of the case in selling both the boat and
cargo.

This is an action on an open Policy of Insurance taken out of the office of the defendants, by Lambeth & Thompson, commission merchants in this city, for the benefit of whom it might concern. They were the consignees of 61 hogsheads of Tobacco, shipped from Hatcher's landing on Green River, in Kentucky, on board of the flat-boat Columbus, the beginning of January, 1838, and wrecked before getting out of said river. The boat was *hauled* ashore at the first convenient landing place, the tobacco taken out and sold in a damaged state. The captain and crew made their protest, notified the owners, (the plaintiffs) who abandoned as for a total loss, to the insurers, (defendants.)

The plaintiffs allege the tobacco was covered by this policy and worth $60 per hogshead. They claim the sum of $3660 with interest; and $284 for money laid out and expended in saving the tobacco from the wreck for the benefit of the defendants. They pray judgment for these sums.

The defendants admitted the execution of the policy sued on, and pleaded the general issue: They averred the sale of the tobacco by the master of the boat was illegal and unauthorized, and that they are in no manner liable.

There was a mass of testimony taken on the trial which is detailed in the opinion of this court, in relation to all the points or grounds of defence.

The jury returned a verdict of $3944 with legal interest. The plaintiffs remitted the sum of $1074 25, which left the sum of $2869 75, and for which judgment was rendered, with legal interest from judicial demand.

The defendants appealed.

*Peyton & Jones,* for the plaintiffs.

*Maybin & Grymes,* for the defendants.

*Garland, J.* delivered the opinion of the court.

This action is brought on an open policy of Insurance taken

EASTERN DIS.
*June,* 1841.

CALDWELL
ET AL.
*vs.*
WESTERN
MARINE & FIRE
INSURANCE CO.

EASTERN DIS.
June, 1841.

CALDWELL
ET AL.
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

by Lambeth & Thompson, for the benefit of whom it may concern, upon tobacco shipped on flat-boats from any point or landing on the Ohio River or its tributaries, directly or indirectly, consigned to them in New Orleans.

In January, 1838, the plaintiffs shipped on a flat-boat from a ware-house on Green River in Kentucky, sixty-one hogsheads of tobacco, consigned to Lambeth & Thompson, which it is alleged are included in the policy at the rate of sixty dollars per hogshead.

It is alleged and proved that the tobacco was shipped on board of a flat-boat, staunch and tight, and in all respects fitted for the voyage, having a competent steersman or master and the ordinary number of men as a crew. In descending Green River in daylight, in a place where a snag was not previously known to be, the water from ten to fifteen feet deep, with a smooth current and in a long reach of the river, the boat struck upon a snag which made a hole through her bottom and in a few minutes she sunk, one end hanging upon the snag. The master and crew appear to have used every effort in their power to save the boat and cargo. Assistance was procured as soon as practicable, and the boat after being got off the snag was taken to the nearest landing, her deck only being above water, and the tobacco landed as soon as practicable, but some of it was in the water three days and all nearly two days. As soon as possible the master called on the senior justice of the peace of the county for advice, as to the best course to pursue, that person not knowing what was best to be done, went with the master to the clerk of the county, at whose suggestion the parties went to the judge of the district, and by the advice and direction of that gentleman the master made his protest and took measures to have the tobacco sold, as no other boat could be had to reship it, and the master had neither means or shelter to open the hogsheads, dry the tobacco and repack it. No regular survey or appraisement was made of the boat or cargo previous to the sale.

The plaintiffs or their agents, as soon as they heard of the

wreck, made an abandonment and claim as for a total loss. The remaining facts will be stated in connection with the grounds of defence. The defendants having appealed from the judgment given against them.

The first ground relied on for a reversal of the judgment is, that the boat became unseaworthy or unfitted for the navigation during the voyage, and was so at the time of the loss, by not having on board a sufficient crew. It is in evidence that the ordinary crew of a boat is three persons, that is, a steersman and two hands. At the time of the loss one of the hands had taken the canoe belonging to the boat and gone ashore to purchase some sugar for the use of those on board. He was at a short distance when the accident occurred. It is further shown, that at the time the boat was in smooth water and in a part of the river considered safe. Several of the witnesses who have navigated the river for years say they never saw a snag in that place before, and another boat was a few yards ahead which passed over or very nearly over the same spot in safety. A person who was superintending the works going on to improve the navigation of Green River says, that in consequence of the number of trees felled on the banks snags had become fixed in places where they were not before, and the best navigators might be deceived. It is further shown, that if the absent man had have been on board, he could not have prevented the accident, as no danger was anticipated. Several witnesses depose that if five times the number of the ordinary crew had been on board the accident could not have been prevented.

It is as unquestionably true that a competent crew is requisite to seaworthiness as having a competent master, and the necessary tackle and apparel, and if the vessel is not properly furnished in that way when she commences her voyage, it is a cause for avoiding the policy; 1 Phillips on Insurance, 312 *et seq.* But if a competent crew is provided for the whole voyage, the policy is not defeated by the occasional absence of some of the sailors on other duties in the course of it. A ship

EASTERN DIS.
*June,* 1841.

CALDWELL
ET AL.
*vs.*
WESTERN
MARINE & FIRE
INSURANCE CO.

A competent crew is necessary to the seaworthiness of a boat or ship; but if one is provided, the occasional absence from the vessel of a hand or seaman on the business of the voyage does not defeat the policy; especially when his presence could not have prevented the accident.

EASTERN DIS.
June, 1841.

CALDWELL
ET AL.
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

at sea, might under particular circumstances be compelled to have a portion of her crew absent for very necessary purposes and a loss take place during their absence in search of water or provisions, yet we think the policy would not be avoided in consequence. Mr. Justice Bayley held in the case of Busk *vs.* Royal Exchange Assurance Company; 2 Barnwell & Alderson, 73; "The owner is bound in the first instance to provide a ship with a competent crew, but he does not undertake for the conduct of that crew in the subsequent part of the voyage;" 1 Phillips on Insurance, 314—15.

In this case, when the boat struck, the man was absent for a necessary purpose, and there was certainly less risque in sending him ashore in a pirogue to purchase necessary supplies than to land the flat-boat in a swollen stream with banks incumbered with fallen timber.

This case is very different from those in 6 Martin N. S. 53; and 14 La. Rep. 489. We think the plaintiffs have proved the boat was *river worthy* notwithstanding the absence of one of the crew, and according to the authorities cited from 3 Mason, 439, and 2 Washington 152, 375, they have sustained this part of their case.

*A strong case of necessity is required to justify a master in selling his boat or vessel and cargo, if other means of saving either be within his reach. But where he acts with fairness and uses all proper diligence to save both he will be justified by the necessity of the case in selling both the boat and cargo.*

The second ground of defence is, that the sale was unnecessary. It is certain that a strong case of necessity must be made out to justify a master in selling a vessel or cargo, if other means of saving either be in his reach; and he must avail himself of all proper diligence, (taking his situation and the condition of the vessel and cargo into consideration,) to procure the means; Abbott on Shipping, p. 2, *et seq.*

In this case it seems to us the master of the boat acted with great discretion and fairness. As soon as his boat sunk he used every effort to get it to the shore and succeeded, although full of water and sunk to the deck. He procured all the assistance in his power to assist in landing the tobacco, and got out every hogshead as soon as practicable, though much damaged. He applied to persons presumed to be most competent to advise him, what was best for the interest of all concerned.

The sale appears to have been fairly conducted, and advertise-
ments sent into as many as four counties from seven to nine
days previous to it, and persons attended from a distance of
more than forty miles to bid.   Two companies were formed
who bid against each other, and the tobacco was cried for more
than two hours and sold for $1075.

It is shown the master could not have procured another boat
to ship the tobacco on, or raise and repair the one sunk, and
it is further shown that if he had been able to do so, the to-
bacco would have been rotten before it could have reached
New Orleans.   Two witnesses engaged in the tobacco busi-
ness in this city state such to be their opinion, and relate an
instance where a cargo of tobacco was sunk near Helena, in
Arkansas, remained in the water only six or eight hours, then
brought to the city in a steamboat, and the loss was sixty-two
per cent.   That it would have been total, if brought from
Green river, in Kentucky, on board of a flat-boat we cannot
doubt.

The defendants say the master and crew should have open-
ed the hogsheads and dried the tobacco.   The evidence on this
point satisfies us that it was not in his power to do so.   For
that purpose it was necessary to have a number of houses or
barns in which the tobacco could have been hung up.   After
it was dried it was necessary to let it remain suspended, until
the weather should make it sufficiently moist to be handled
without injury, so as to put it in bulk and then into the hogsheads.
All the witnesses who saw the tobacco, say that at the place
where it was lying, no shelter or covering could be had to put
the hogsheads under, after they were taken from the water,
and they were exposed on the bank nine days.   On the day of
the sale, water was still draining from some of them.   The
tobacco was purchased by a company, composed of persons in
the neighborhood, by whom it was hauled to several planta-
tions, where it could be opened, and the necessary houses and
presses or *prizes* found for the drying and repacking it.   Brown,
one of the purchasers, says, that sixteen hands were employed

EASTERN DIS.
June, 1841.

CALDWELL
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.
nearly two months, before the boat could be raised and repaired and the tobacco in a condition to be shipped again. The witnesses state the tobacco sold for fully as much as it was worth, and we are satisfied such an eminent necessity existed for the sale as to justify the master in acting as he did.

The judgment of the Commercial Court is therefore affirmed with costs.